## Eversole v. Huff.

(Decided October 28, 1924.)

Appeal from Harlan Circuit Court.

1. Vendor and Purchaser—Recorded Title Bond Constructive Notice, Though Acknowledged Before Holder as Deputy Clerk—Plaintiff's recorded title bond was constructive notice, though acknowledged before plaintiff as deputy clerk; act of clerk in taking acknowledgment being ministerial.

2. Officers—Official Acts of Officer Not Void Because he Practices Law in Violation of Statute.—Official acts of public officer are not

void because he practices law in violation of Ky. Stats., sections 110, 111.

3. Vendor and Purchaser—Title Bond Filed After Examination of Record, but Before Recording of Deed, Constructive Notice.— Where record was examined and deed offered for record, but, revenue stamps being lacking, clerk would not file deed, and holders went out to get stamps, and while they were gone bond for title was filed, grantee in deed, subsequently recording it, had constructive notice of rights under title bond, in view of Ky. Stats., section 500.

4. Vendor and Purchaser—Title Bond Held to Sufficiently Describe Land in Certain Patents but Not Other Land.—Where title bond provided that should three patents contain more than 350 acres holder should have only 350 acres, but in case they contained less then shortage could be made up from adjacent lands and such patents contained less than 350 acres, bond was not void for uncertainty as to land within patents, but did not sufficiently identify any other land as against subsequent grantee.

5. Limitation of Actions—Fifteen Year Statute Held Applicable to Action to Enforce Bond for Title.—Ky. Stats., section 2514, fifteen year statute, and not section 2522, the ten-year statute, applies to action to enforce title bond.

6. Limitation of Actions—Section Held to Only Apply where Vendee in Possession.—Ky. Stats., section 2543, providing that limitations shall not apply where vendee in possession sues for conveyance has no application where vendor is in possession.

JAMES H. JEFFRIES and J. S. FORESTER for appellant.

CLAY & CARTER and H. C. CLAY for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Reversing.

On February 23, 1905, J. H. Metcalf and wife executed to G. A. Eversole the following writing:

"TITLE BOND

"Know all men by this writing that for and in consideration of seventeen hundred and fifty dollars ($1,750.00) cash in hand paid, the receipt whereof is hereby acknowledged, we J. H. Metcalf and Amy Metcalf, wife of said J. H. Metcalf, have this day sold and do hereby agree to bind ourselves to convey to G. A. Eversole, second party, we being first parties, by our deed of general warranty to be executed and delivered to said Eversole as soon as the land sold and described hereinafter has been surveyed and acreage ascertained, three hundred and fifty acres at the price of five dollars per acre, to be

under good title and to be measured strictly by horizon measurement and to be within the three patents hereinafter named, viz.: one hundred acres patent made in the name of John and Daniel Creech dated March 24, 1857; one for 200 acres in name of J. H. Metcalf dated October 9, 1873 and issued April 1, 1876, and saving 50 acres more or less and the third a 200 acre survey in name of J. H. Metcalf dated April 9, 1873, and issued April 1, 1876. But should three patents contain more acres than 350 when surveyed then second party is to have only 350 acres thereout, but in case they contain less than 350 acres then first parties are to make up shortage from other lands adjacent to the land in said patents out of their other lands.

"It is agreed by the parties that second party may run the compass in surveying said land and that first party is to carry chain in making said survey and that second party may calculate area thereof under his said survey. The survey to be made at as early day as weather will permit.

"Given under our hand this February 23, 1905.

"J. H. METCALF,
her
"AMY x METCALF
mark"

Soon after the execution of the paper the parties met on the ground and undertook to do the surveying, but they found it necessary to have copies of certain old patents which were not at hand and the survey was postponed. Some difficulty was experienced in securing these papers. The land was coal property and no railroad was near and so matters drifted along until December 6, 1917, when a sale having been made of part of the land to A. B. Cornett, they surveyed out the Metcalf patent for 200 acres, based upon the survey made October 9, 1873, and found that after counting out the laps there remained in this patent 51¼ acres which Eversole and Metcalf by a joint deed then conveyed to Cornett. In this deed are these words: "It is understood that G. A. Eversole has a title bond from the grantor James Metcalf for the land herein conveyed." Nothing more was done about the remainder of the land until November 17, 1918, when Eversole, having gotten the necessary papers and a good compass, went to Metcalf's house to

run out the land. Metcalf said that his son Adrian Metcalf was sick and asked to put off the survey until Adrain was well enough to go with them and so no survey was made. On November 26, 1918, J. H. Metcalf by deed conveyed the land to his son Adrian Metcalf in consideration, as recited in the deed, of $1,500.00 cash in hand paid. On December 9, 1918, Adrian Metcalf and wife conveyed the land to H. L. Huff in consideration, as recited in the deed, of $4,000.00 cash in hand paid and $2,-500.00 to be paid later. Although Eversole had paid J. H. Metcalf the price of the land, $1,750.00, as recited in his bond and had from the date of the bond given in the land for taxation in his own name, he had not had his title bond lodged for record until December 9, 1918. On Desember 19, 1918, Eversole brought this suit against J. H. Metcalf, Adrian Metcalf and H. L. Huff, praying the enforcement of his title bond and alleging that Adrian Metcalf and Huff had bought with notice of it. This they denied; proof was taken and on final hearing the court adjudged that Huff should pay to Eversole the $2,500.00 of the purchase money remaining unpaid by him, and that Huff should hold the land. Eversole appeals.

Adrain Metcalf was a witness to the title bond executed by his father to Eversole and well knew of this title bond when he took the deed from his father. He contends that the title bond was only a mortgage to secure a loan of the $1,750.00 by Eversole, but this is not only in conflict with the terms of the paper but with the conduct of the parties throughout the transaction, including the recital above quoted from the deed made to Cornett.

Much of the large record before us is taken up with evidence to show that Huff had actual notice of the title bond when he bought. But without going into this minutely the court is of the opinion that the circuit court did not err in holding that Huff did not have actual notice of the title bond. It remains to determine whether he had constructive notice of it. The facts are these:

On the morning of December 9, 1918, Huff and Adrian Metcalf and Huff's attorney came to the clerk's office before the clerk had opened the office and as soon as the office was opened they went in, and the attorney, at the direction of Huff, began an investigation of the records to see if the title was clear. He made this investigation in thirty or forty minutes and reported to Huff

that the title was clear. They then presented to the deputy clerk the deed from Adrain Metcalf to Huff. He told them that the deed could not be lodged for record until it was stamped and that $6.50 in stamps must be placed upon it. They went out to get the stamps. In the meantime Eversole, who had learned that the deed from J. H. Metcalf to Adrian Metcalf had been lodged for record, came into the office to examine that deed. He brought with him his title bond and when he reached the office delivered it to the clerk and had him to enter it lodged for record. After this had been done Adrian Metcalf and Huff returned to the office with the deed properly stamped and delivered it to the deputy clerk for record and he accepted it without knowing that the clerk had accepted the title bond for record while they were gone. In other words, the clerk did not know what passed between them and the deputy, and the deputy did not know what passed between Eversole and the clerk. But the proof of the clerk, the deputy and Eversole is all consistent and clearly shows that Eversole came in and lodged his bond for record with the clerk while Adrian Metcalf and Huff were out of the office to get the stamps to put on the deed. Eversole did not know what they were doing and they did not know what he was doing, but the fact is his title bond was lodged for record before the Huff deed was lodged for record. By section 500, Kentucky Statutes, it is provided that "any contract for the sale of land or any interest therein," when properly acknowledged or proved, may be recorded "and the record of all such contracts recorded shall, from the time of lodging the same for record, be notice of such contracts to all persons."

It is earnestly maintained that Eversole's title bond though lodged for record first was not constructive notice to Huff because the title bond was acknowledged before Eversole as deputy clerk and that the acknowledgment was for this reason void. This precise question was before this court in Stevenson v. Brasher, 90 Ky. 23, and it was there held that the acts of a clerk in taking an acknowledgment and certifying same are ministerial and are not void, although he is interested. It is insisted that this case is no longer the law for the reason that then only the clerk could take an acknowledgment and that since then by statute notary publics have also been authorized to take acknowledgments; but that opinion does not rest upon this narrow ground, for then a deed

attested by two witnesses could be recorded when properly proved. It rests upon the broader ground which is thus stated in 1 R. C. L. 270, in discussing the validity of the clerk's certificate of acknowledgment in such cases:

"But arbitrarily to declare his act *ipso facto* void is repugnant to sound principles of the law of evidence, and in many cases must be productive of great hardship and injury. A more salutary rule declares that where there is no imputation for charge of improper conduct or bad faith or undue advantage, the mere fact that the acknowledgment was taken before an interested officer will not vitiate the ceremony or render it void, if otherwise it is free from objection or criticism."

See also Davis v. Hale, Ann. Cas. 1916c 701.

It is also insisted that Eversole being an attorney-at-law his act was void under sections 110, 111, Kentucky Statutes, which are in these words:

"The governor, or a judge of the Court of Appeals or circuit court, or clerk or deputy clerk of any court, shall not practice law or render any service as an attorney or counsellor-at-law, in any of the courts of this Commonwealth, except in such cases as he may have been employed in previous to his election, or in cases in which he may be personally interested.

"Any person violating the provisions of either of the three preceding sections shall be guilty of a misdemeanor, and, upon conviction, fined not less than two hundred nor more than five hundred dollars for each offense."

It will be observed that these statutes forbid each of the officers named to practice law as an attorney in any of the courts of this Commonwealth except in such cases as he may have been employed in previous to his election or may be personally interested in, and if he practices law in violation of the section he may be fined not less than two hundred nor more than five hundred dollars. This is a penalty for practicing law in violation of the statute. The official acts of the officer are not declared void for this reason, and plainly it was never contemplated by the statute that the official acts of the governor or any of the officials named should be invalid if he practices law in violation of the statute.

After Adrian Metcalf and Huff left the clerk's office they went to the house of John Henley for dinner and there about twelve o'clock, they testify, that Huff gave Metcalf a check for a thousand dollars and paid him three thousand dollars in cash, making the cash payment of four thousand dollars recited in the deed, but this was all several hours after the title bond of Eversole had been lodged for record. The court, therefore, concludes that as the title bond was lodged for record before the deed to Huff was so lodged, Huff took the property with constructive notice of Eversole's rights under the title bond.

But it is insisted that the title bond is void for uncertainty, in that it does not identify the land to be conveyed. It will be observed that it is provided in the title bond that should the three patents contain more than 350 acres when surveyed, then Eversole is to have only 350 acres thereout, but in case they contain less than 350 acres then the first parties are to make up the shortage from other lands adjacent thereto. It is insisted that there is no way to determine what land Eversole did get under the bond in case of an excess when it is not provided how this excess is to be cut off. But the proof clearly shows that there is no excess, that the two patents which have not been run out contain considerably less than three hundred acres. This is shown by the testimony of the defendants no less than that for the plaintiff. Eversole cannot require Metcalf to lay off to him other lands to make up the deficiency, for the contract does not identify in any way such lands. But he is entitled to a conveyance of the land which is sufficiently described in his title bond and must look to his grantor for a return of the purchase money as in other cases of deficiency. Yet this is no reason why he is not entitled to a conveyance of the lands which are sufficiently described.

Lastly it is insisted that the action not having been brought for thirteen years after the cause of action accrued, is barred by limitation under section 2522, Kentucky Statutes, which provides:

"An action for relief not provided for in this or some other chapter, can only be commenced within ten years after the cause of action accrued."

But this is not an action for relief not provided for in the statute. By section 2514 an action upon any writ-

ten obligation "for the performance of any undertaking shall be commenced within fifteen years after the cause of action first accrued." This is an action upon a written obligation signed by the parties to be charged.

It is insisted that it does not fall within that section by reason of section 2543, Kentucky Statutes, which provides:

"The provisions of this chapter shall not apply in the case of a continuing and subsisting trust, nor to an action by a vendee of real property in possession thereof, to obtain a conveyance."

The meaning of the section so far as it applies to an action by a vendee of real property to obtain a conveyance is that where the vendee has been in possession of the property the statute does not run against him. But this section only applies where the vendee is in possession of the property. It has no application where the vendor is in possession. It was intended for the benefit of the vendee in possession and not for the benefit of the vendor who fails to convey. Howard v. Howard, 96 Ky. 445.

Judgment reversed and cause remanded for a judgment as above indicated.