## PORTER et al. v. JUSTICE.

Court of Appeals of Kentucky.

Oct. 12, 1951.

P. B. Stratton, Pikeville, for appellants.

Baird & Hays and Hobson & Scott, Pikeville, for appellee.

LATIMER, Justice.

The parties, appellants and appellee, contested ownership of the minerals and mineral rights in a tract of land situated on Hurricane Creek in Pike County, each claiming ownership by conveyance from common grantors, I. N. Porter and his wife, Cora A. Porter.

On April 5, 1906 I. N. Porter and Cora A. Porter executed an instrument which appellants insist is merely a title bond but which appellee insists was sufficient to pass title. It reads in part: "For and in consideration of $2500, we sell and convey to James Hatcher all the coal, oil, gas, stone, salt water, fire and potters clay and all other minerals of any and all kinds, that is in or under the following described tract of land in Pike County, Kentucky at the

mouth of Hurricane Creek. * * * We also sell to said Hatcher one tract of land in fee simple on the Spring Branch of Hurricane Creek in Pike County, Kentucky, adjoining the lands of John Damron & S. W. Ratliff heirs, there is excepted twenty-five trees branded 'X'. Said Hatcher has this day paid us Five Hundred Dollars by check on Merchants National Bank of Ashland, Kentucky, as part payment on said sale. We agree to make said Hatcher a deed of general warranty to said lands. Said Porter has the right to use coal for domestic uses from home tract."

Hatcher was given the right to build houses, mining camps, a railroad, tramroad, coal tipples and other buildings for the purpose of mining and marketing coal.

This instrument signed without acknowledgment was not lodged for record until the 11th day of February, 1927 at which time it was recorded in the office of the County Clerk of Pike County.

On March 14, 1919 in consideration of $450 and love and affection I. N. Porter and his wife, Cora A. Porter, executed and delivered to Bernard N. Porter a general warranty deed to a portion of the home farm. There was no reservation or exception in this deed as to the minerals or mineral rights.

Both Bernard N. Porter and the Hatchers executed leases to the Utilities Elkhorn Coal Company and, by agreement of parties, the Pikeville National Bank and Trust Company was designated trustee to hold the royalties from the disputed portion until the question of title was settled.

Hatcher's lease covers the entire I. N. Porter farm while the Bernard N. Porter lease covers and includes only a portion thereof.

This action was instituted by appellants seeking to quiet title to the minerals and mineral rights in the portion of the land covered by their deed.

The Hatcher estate, through its executor and trustee, filed answer, which was made a counterclaim against plaintiff and cross-petition against the heirs-at-law of I. N. Porter and Cora A. Porter, claiming ownership of the minerals by reason of the instrument set out above. It is further alleged in the answer that the consideration as cited in the instrument was paid but that I. N. Porter and his wife failed to execute a deed; that plaintiff, Bernard N. Porter, knew of the execution of the instrument when he purchased his tract on March 14, 1919; and that should the court adjudge the Hatcher estate not to be entitled to a deed to the property, it is entitled to an accounting and return of the consideration with interest.

Plaintiff filed amended reply alleging that at the time he purchased the property and obtained his deed he did not know of the instrument to Hatcher and insisted that he is an innocent purchaser for value and further pleaded the fifteen year Statute of Limitation as a complete bar to the cause of action asserted by defendants.

The court, after having considered the pleadings, exhibits and proof, adjudged that the instrument from I. N. Porter and wife to James Hatcher, though not recordable, passed title to Hatcher; that the executor and trustee of the James Hatcher estate is owner for the use and benefit of the devisee under the James Hatcher will; that deed be executed in conformity therewith; that as executor he is entitled to the monies held by the trustee, Pikeville National Bank and Trust Company and directed that same be paid over.

In urging reversal appellants insist that the relief sought by the executor and trustee of the Hatcher estate is the enforcement of a title bond, and that since such enforcement was never undertaken until approximately thirty-five years after the date of execution, they are not within the fifteen year limitation and, consequently, cannot enforce the performance thereof. In support of that view Eversole v. Huff, 205 Ky. 314, 265 S.W. 797, is cited and relied upon.

Appellee insists that the instrument set out above contained apt words of conveyance, amply sufficient to pass title and to bind the parties. It is true there was no acknowledgment but this is only a formal prerequisite to the recording

of the instrument and does not address itself to the passing of title. We think the court rightly held that the title passed even though there is an absence of some of the ordinary formalities of a deed.

We need only call attention to the fact that the rule in the Eversole case is applicable where the holder of the title bond or like instrument is not in possession. The Kentucky Statute 381.030 provides: "Death of disseizor; effect. The death of a disseizor while seized of property shall not be such descent in law as to take away the right of entry of any person who has such right at the death of the disseizor, unless the disseizor has had fifteen years' peaceable possession after the disseizin was committed."

We have held that "The owner of the surface is regarded as trustee, in possession of the mineral for the use and benefit of its real owner, and he cannot acquire title by adverse possession to the mineral estate except in the way and manner which a trustee of other real property may acquire title against the cestui que trust. He is subject to all the rules controlling other trustees in possession." McPherson v. Thompson, 203 Ky. 35, 261 S.W. 853, 854; Piney Oil & Gas Co. v. Scott, 258 Ky. 51, 79 S.W.2d 394, 397.

The factual situation may be observed by calling attention to the provision in the instrument above from I. N. Porter and wife to the Hatchers that there was also sold one tract of land on Spring Branch on Hurricane Creek. However, on July 14, 1913 I. N. Porter and his wife conveyed the surface of the Spring Branch tract to Henry Harmon. This is the very same tract covered in the original instrument, whereby it was agreed to convey in fee simple the surface of this Spring Branch tract to James Hatcher. In the deed from I. N. Porter to Harmon this exception is found: "Parties of the first part only convey the surface of said tract, all minerals are excepted, to-wit: coal, oil, gas, stone and potters clay, etc., and the use of all timber at the time of mining and the privilege of building mining camps and all necessary means of removing said minerals over said lands."

On the back of the sales agreement or deed originally executed there is this notation: "I. N. Porter sold surface to H. Harmon at agreed price of $500.00—and given me Credit—for same on this—and I paid him in full—See checks in note case etc. /s/ J. H."

With this credit, the record shows the consideration for the minerals and mineral rights as recited in the original instrument to have been paid in full.

Stallard Harmon, son of Henry Harmon, testified in this action: "We thought we were getting the mineral and all, and I will tell you all I know about it; we thought we were getting mineral and all, and I mentioned about the mineral, and he said he had sold his mineral to Uncle Jim Hatcher and didn't own it; that is all I know; he said he sold it to Uncle Jim Hatcher."

Thus we see that I. N. Porter recognized the ownership of the minerals in J. H. Hatcher. Consequently, the fifteen year Statute of Limitation is not applicable.

It is next insisted that Bernard N. Porter was an innocent purchaser for value; that he had no knowledge whatsoever of the existence of the instrument of conveyance from I. N. Porter and wife to James Hatcher; and that he would not have purchased the property had he had such knowledge.

Appellee calls attention to these facts: that the consideration in the deed from I. N. Porter to his son, Bernard Porter, was for love and affection and for $450 which had largely been advanced; that Bernard Porter sold this surface for $1500; that when he sold it, which was in 1938, he recognized the existence of the prior sale of minerals, since the deed contains this provision: "The minerals, oil and gas are hereby reserved and set out, same having been conveyed heretofore." Thus, we see Bernard N. Porter knew the minerals had theretofore been conveyed. As far as the record shows he hadn't made any such conveyance. The conveyance

made by his father to James H. Hatcher was the only conveyance theretofore made. Considering the above, together with the fact that the relationship of father and son existed, we think the court properly found Bernard Porter not to be an innocent purchaser for value.

The judgment is affirmed.